## WALKER v. AMERICAN INS. CO.

No. 17620.     Opinion Filed Dec. 6, 1927.

(Syllabus.)

**Appeal and Error—Verdict Supported by the Evidence not Disturbed—Harmless Error.**

Where a verdict of a jury is manifestly right, or if it appears from the evidence that no other verdict could have been properly returned, under rulings and instructions of the court entirely correct. the judgment based on such verdict will not be disturbed by this court on appeal. In such case, the errors, if any, unless they be fundamental. may be said to be harmless.

Commissioners' Opinion, Division No. 2.

Error from District Court, Osage County; Jesse J. Worten, Judge.

Action by Wade Walker against American Insurance Company. Judgment for defendant. and plaintiff appeals. Affirmed.

Hargis & Yarbrough and L. G. Williams, for plaintiff in error.

Ross & Thurman, for defendant in error.

HALL, C. The plaintiff sued on a theft peril insurance policy issued by defendant, to recover the value of a Cadillac automobile. which he alleged was stolen from him on the night of October 13, 1924, while the same was parked by the side of a public highway in front of a residence near the city of Pawhuska. The automobile was equipped with a transmission locking device, and the policy of insurance contained what is termed therein a "locking device allowance clause," which required the assured to use all diligence and care in maintaining the locking device and in locking the automobile when leaving it unattended.

The defendant interposed two defenses: First, it was specially denied that the automobile was stolen. Second, it pleaded a breach of the warranty clause pertaining to locking the automibile when leaving it unattended. The cause was submitted to a jury. and the result was a verdict in favor of the defendant.

The plaintiff appealed, and has assigned various errors. In substance, the errors and contentions of plaintiff are as follows: (1) That the locking device allowance clause contained in the policy of insurance was not operative; (2) that the instruction pertaining to the degree of care imposed on plaintiff was high; (3) that the court erred in not granting a new trial upon the grounds of newly discovered evidence; and (4) that

plaintiff suffered surprise by reason of the character of defense.

The instruction complained of is to some degree erroneous, or, at least, technically incorrect. Pertaining to the use of the locking device, this instruction required of plaintiff such diligence and care "as would have ordinarily been used by a careful and prudent man under the circumstances," instead of restricting the degree of care to that of a man of "ordinary prudence."

In the face of this record, that is, the testimony in the case and the verdict of the jury thereon, whatever error was embodied in this instruction, and also the other errors complained of. become, in this case, entirely and wholly harmless. The doctrine of harmless error, which finds expression in section 2822. C. O. S. 1921, is as much a part of the law of this state as any other statutory enactment. It has been applied so often in this state that, were we not to apply it here, it would be a deviation from established precedent.

The rule obtaining here, and now elsewhere, is that a judgment will not be reversed for technical errors or otherwise, where it is clearly apparent that at any subsequent trial on the same evidence a conscientious jury could render no other verdict than the one already rendered. This is supported by a long line of Oklahoma cases and the recent cases from the other jurisdictions.

The strength and vitality of plaintiff's case, when met with the first ground of defense, is as follows: Plaintiff and his wife had separated the day preceding the loss or theft of the automobile. She had furnished what actual money investment had entered into its purchase. On the witness stand, plaintiff was never certain as to what time of the night the car was stolen; that is, he testified that he left the car only five or ten minutes, and that the car was stolen during these ten minutes, but he would never fix anywhere near approximately the time of that ten minutes. He did not know whether it was eight, nine. ten, eleven, twelve o'clock, or later (earlier in the next day). He testified that he had with him his sister, a Mrs. Smith, at the place where the car was stolen, which place was at the residence of one Bill Poe, and that after the automobile disappeared, Poe, who was asleep, was awakened by plaintiff and a member of Poe's household, and that Poe took plaintiff and his sister to the city of Pawhuska in a Ford automobile. Poe was introduced as a witness on behalf of plain-

tiff (he had been excluded from the court room along with other witnesses), and on direct examination furnished the following testimony:

"Q. Now who, if any person, was with him at the time you have in mind? A. With Mr. Walker? Q. Yes, sir. A. By himself, so far as I know. I did not see any one there. Q. Did you see his sister, Mrs. Smith, there? A. Who? Q. Mrs. Smith, Bonnie Smith, did you see her there with him, or about there? A. No, I don't think I did."

By his own counsel he was asked this directly leading question:

"Q. Mr. Walker, didn't Mrs. Smith come down with you, Mr. Poe, I mean, didn't Mrs. Smith, or didn't a woman accompany you and Mrs. Walker from your place to the police station? A. Well, I disremember something about that. I was kind of excited, and it was night, and I just jumped out, and it might have been. I would not say for sure whether there was or was not."

On cross-examination, the plaintiff testified that he did not know whether he left the car locked or unlocked. When asked if he hadn't made certain statements to other people, Clayton Smith and C. R. Wackenhuth, that the car was left unlocked, he answered "I don't know." He "didn't remember" telling anybody whether it was after midnight or whether it was before midnight when the car was stolen. When asked about his former statement in an affidavit fixing the time the car was stolen "as sometime near midnight or after" when asked if he made that answer, he said, "I might have." When asked if he remembered about the taking of his testimony concerning the occurrence, before a notary public, Geneva May, in Pawhuska, he answered "I am not acquainted with Geneva May."

In connection with the matter of the actionable theft of the automobile, the above is the character and kind of evidence furnished on behalf of plaintiff. On behalf of defendant, the police sergeant, who was on duty the night the car was supposed to have been stolen, was introduced as a witness, and he testified that after midnight plaintiff went to the police station and reported that somebody had stolen his automobile. The sergeant extended him a pencil and piece of writing paper, and asked him to write a description of the car—name, model, number, etc.—and that plaintiff, after hesitating a moment, pushed it back and remarked "Oh, hell, I don't want to snitch on anybody," then stood around the police sta-

tion for some little time and left; and the police sergeant made no further effort towards recovering the car.

This testimony of plaintiff himself and his witness Poe, as to just what occurred the night the automobile disappeared, does not impress us favorably, and evidently it had the same effect on the jury. They reflected their impressions in their verdict. Unquestionably, the jury thought that this evidence was too flimsy, too vacillating, too uncertain and indefinite to conclude that the automobile was the subject of actionable theft; that is, stolen in such a manner as to render the insurance company liable therefor. The rule applicable to this case was announced by this court in the case of Cosden Pipe Line Co. v. Berry, 87 Okla. 237, 210 Pac. 141, quoting and adopting the rule announced in Ruling Case Law, vol. 14, pp. 815, 816, as follows:

"It is only when an erroneous instruction has resulted in prejudicing the rights of the complaining party, that the judgment will be reversed, and it is the general rule that such action will not be taken by the appellate court for error in giving or refusing to give instructions if the verdict is manifestly right, or if it appears from the evidence that no other verdict could have been properly returned by the jury under instructions entirely correct."

That rule is applicable to all errors committed except such errors as are fundamental. The rule is that the error must have operated to the injury and prejudice of the substantial rights of the complaining party. It is not enough that the error complained of prevented the appellant from gaining an advantage not warranted by the evidence and the law. The reason for this rule is aptly stated by the authors of Ruling Case Law, vol. 2, pp. 230, 231, as follows:

"* * * To assert the contrary would be to contend that courts are not created for the purpose of dealing out justice, but for the purpose of applying rules of law to incidental features of a case irrespective of the merits of the claims of the parties as to the substance"

Among the numerous authorities supporting the rule are the following recent decisions of this court: Covington State Bank v. Jayne, 103 Okla. 55, 229 Pac. 465; Empire Gas & Fuel Co. v. Wainscott, 91 Okla. 66, 216 Pac. 141; Schaff v. Coyle, 121 Okla. 228, 249 Pac. 947.

Under this theory of the case, it is unnecessary to prolong this opinion with a discussion of the various other assignments of error. However, we will briefly give atten-

tion to the assignment based upon the refusal of the court to grant a new trial on the allegations of newly discovered evidence. We think the lower court was correct in refusing to grant a new trial for two reasons: First, lack of diligence on the part of the plaintiff in securing the testimony at the trial of the cause; and second, the nature of the testimony which plaintiff said he could produce at a subsequent trial. In this connection plaintiff secured the affidavit of Mrs. Bonnie Smith, who, according to plaintiff's testimony, accompanied him to the residence of Bill Poe the night the car was stolen, and in this affidavit Mrs. Smith stated in substance that she, herself, locked the car, and returned to her mother's home, put the keys in a receptacle, and made no mention of that fact whatever before the trial of this case; that after the trial she notified the plaintiff where he could find the keys and he found them. Disregarding the proposition of lack of due diligence, to discover and procure this testimony before the trial, this affidavit must be read in connection with the testimony of plaintiff's witness, Mr. Poe, whose testimony we have set out verbatim in this opinion.

The judgment is hereby affirmed.

TEEHEE, DIFFENLAFFER HERR, and REID, Commissioners, concur. BENNETT, Commissioner, dissents.

By the Court: It is so ordered.

Note.—See 4 C. J. pp. 908, 909, §2878; 2 R. C. L. p. 194; 1 R. C. L. Supp. p. 433; 4 R. C. L. Supp. p. 90; 5 R. C. L. Supp. p. 79; 6 R. C. L. Supp. p. 73.